STATE OF MINNESOTA

IN SUPREME COURT

A13-0821

| | |
|---|---|
| Court of Appeals | Wright, J. |
| | Concurring, Stras, J. |
| State of Minnesota | |
| | |
| Respondent, | |
| | |
| vs. | Filed: August 26, 2015 |
| | Office of Appellate Courts |
| Thomas Raymond Struzyk, | |
| | |
| Appellant. | |

_____

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, Karen Andrews, Assistant Attorney General, Saint Paul, Minnesota; and

Philip Miller, Benton County Attorney, Karl Schmidt, Assistant Benton County Attorney, Foley, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Cort C. Holten, Jeffrey D. Bores, Gary K. Luloff, Chestnut Cambronne PA, Minneapolis, Minnesota, for amicus curiae Minnesota Police and Peace Officers Association Legal Defense Fund.

_____

S Y L L A B U S

1.     Under the plain language of Minn. Stat. § 609.2231, subd. 1 (2014), the offense of felony fourth-degree assault of a peace officer (transfer of bodily fluids) requires proof of a physical assault.

1

2.     Because the intentional act of throwing or transferring bodily fluid at or onto an officer, in itself, is not the crime of felony fourth-degree assault of a peace officer, the district court erred by failing to include the element of "physical assault" in its instructions to the jury.

Reversed and remanded.

O P I N I O N

WRIGHT, Justice.

Following a jury trial, appellant was found guilty of felony fourth-degree assault of a peace officer, Minn. Stat. § 609.2231, subd. 1 (2014), and gross-misdemeanor obstruction of legal process or arrest, Minn. Stat. § 609.50, subd. 1(2) (2014).  At issue is whether the intentional act of throwing or transferring bodily fluids at or onto the officer, *in itself*, is the crime of felony fourth-degree assault of a peace officer (transfer of bodily fluids), in violation of section 609.2231, subdivision 1.  We conclude that the plain and unambiguous language of section 609.2231, subdivision 1, requires that the State prove the elements of a physical assault in addition to proving that a defendant intentionally threw or transferred bodily fluids at or onto the officer.  Because the district court erred by failing to include the element of "physical assault" in its instructions to the jury, we reverse and remand for proceedings consistent with this opinion.

I.

On August 22, 2012, Benton County Sheriff's Deputy Brad Kadlec went to the home that appellant Thomas R. Struzyk shared with his mother.  The purpose of the officer's visit was to execute a Stearns County arrest warrant alleging that Struzyk drove

2

without proof of insurance. Struzyk's mother allowed the officer to come inside, then woke up her son. Standing outside Struzyk's bedroom, the officer identified himself as a law enforcement officer and told Struzyk of the warrant for Struzyk's arrest. In response to Struzyk's request to see the warrant, the officer explained that he did not have the warrant in his possession but that Struzyk could view an electronic copy on the computer in the officer's squad car. After Struzyk inquired about the nature of the charged offense, the officer mistakenly told Struzyk that it was for passing a dishonored check.

Struzyk repeatedly swore at the officer and refused to get out of bed, prompting the deputy to call for backup assistance. As the officer stepped aside to place the call, he noticed a gun case in Struzyk's bedroom. Struzyk slammed the bedroom door. Because the officer was concerned that Struzyk might possess a firearm, the officer reopened the bedroom door. Struzyk clenched his fists, assumed a "fighting stance," and began to advance toward the officer. Retrieving his Taser, the officer ordered Struzyk to calm down. As Struzyk continued to advance, saying, "f***ing tase me," the officer fired his Taser. Taser probes struck Struzyk in the chest and abdomen.

The officer testified that Struzyk removed one of the Taser probes and agreed to come with the officer. According to the officer, Struzyk subsequently lifted his shirt and said, "Look what you did to me." Struzyk touched a small, bleeding chest wound with his index finger and smeared a small amount of blood from the wound onto the officer's uniform. As he did so, Struzyk said, "This is for you." The officer testified that he also was wearing a bullet-proof vest and a T-shirt and that no blood touched his skin.

3

Struzyk testified that he never threatened the officer. According to Struzyk, as he was putting on his clothes, the officer became upset and tased him. After being tased, Struzyk testified, he pulled the probes out of his chest and tossed them to the officer. Struzyk admitted that, when he tossed the probes to the officer, blood could have transferred from the probes onto the officer's uniform. The officer subsequently arrested Struzyk.

The State charged Struzyk with three offenses related to the incident. Count one alleged felony fourth-degree assault of a peace officer, a violation of Minn. Stat. § 609.2231, subd. 1, for intentionally smearing blood on the officer's uniform. Count two alleged gross-misdemeanor fourth-degree assault of a peace officer, a violation of Minn. Stat. § 609.2231, subd. 1, for physically assaulting the officer while he was effectuating a lawful arrest or executing any other duty imposed by law.[1] Count three alleged gross-misdemeanor obstructing legal process or arrest, a violation of Minn. Stat. § 609.50, subd. 1(2).

Prior to trial, Struzyk moved the district court to instruct the jury on count one as follows:

> A "physical assault" is the intentional infliction of bodily harm upon another or an intentional attempt to inflict bodily harm upon another. You may find that the act of throwing or transferring bodily fluid at or onto the officer in itself constituted a physical assault if you find that the manner in

---

[1]    The criminal complaint erroneously referred to this offense as a felony. But the maximum penalty is consistent with the penalty for a gross-misdemeanor offense, and both the parties as well as the district court have referred to the charged offense as a gross misdemeanor.

which the bodily fluids were thrown or transferred at or onto the officer meets the definition of "physical assault," contained herein.

The State objected. In its view, because the act of intentionally throwing or otherwise transferring bodily fluids or feces at or onto an officer, in itself, is a felony assault under Minn. Stat. § 609.2231, subd. 1, the act need not independently involve an intentional infliction of bodily harm on another or an intentional attempt to inflict bodily harm.

The district court denied Struzyk's requested instructions, citing *State v. Kelley*, 734 N.W.2d 689, 691–95 (Minn. App. 2007). In *Kelley*, the court of appeals rejected an argument that a felony fourth-degree assault of a peace officer, section 609.2231, subdivision 1, requires the State to prove both an independent assault *and* the intentional act of throwing or transferring bodily fluids or feces. Instead, the district court instructed the jury based on CRIMJIG 13.22, which required for a felony fourth-degree assault that a jury find only that the accused intentionally threw or transferred bodily fluids onto a peace officer. *See* 10 Minn. Dist. Judges Ass'n, Minnesota Practice—*Jury Instruction Guides, Criminal*, CRIMJIG 13.22 (5th ed. Supp. 2012). Specifically, the district court instructed the jury that the elements of felony fourth-degree assault of a peace officer are as follows:

> First, [the officer] was a licensed Minnesota peace officer at the time of the assault.
>
> Second, the Defendant threw or otherwise transferred bodily fluid or feces at or onto the officer.
>
> Third, the Defendant did so intentionally.
>
> Fourth, the assault occurred while [the officer] was effecting an arrest or executing any other duty imposed by law.

5

Fifth, the Defendant's act took place on or about August 22, 2012 in Benton County.

The jury found Struzyk guilty of count one, felony fourth-degree assault of a peace officer, and count three, gross-misdemeanor obstruction of legal process or arrest. But the jury acquitted Struzyk of count two: gross-misdemeanor fourth-degree physical assault of a peace officer, in violation of Minn. Stat. § 609.2231, subd. 1, for allegedly inflicting or attempting to inflict bodily harm upon the officer while he was effectuating a lawful arrest or executing any other duty imposed by law. The district court stayed the imposition of Struzyk's sentence for the fourth-degree felony-assault conviction and placed Struzyk on probation for three years. The district court declined to adjudicate the gross-misdemeanor obstruction offense.

On appeal, Struzyk argued that the district court abused its discretion by declining to instruct the jury that the act of throwing or transferring bodily fluids at or onto the officer, in itself, is a physical assault only when the manner in which the bodily fluids were thrown or transferred at or onto the officer inflicted or attempted to inflict bodily harm on the officer. The court of appeals affirmed the district court, concluding that the transfer of blood onto an officer in and of itself constitutes fourth-degree felony assault. *State v. Struzyk*, No. A13-0821, 2014 WL 996522, at *2 (Minn. App. Mar. 17, 2014). In reaching its conclusion, the court of appeals relied on *Kelley*, 734 N.W.2d at 695 (holding that "an intentional throwing or otherwise transferring of bodily fluids or feces at or onto an officer" is a fourth-degree assault without other assaultive behavior). We granted Struzyk's petition for further review.

6

## II.

We first consider whether a "transfer of bodily fluids" is a physical assault for the purpose of fourth-degree felony assault of a peace officer (transfer of bodily fluids), Minn. Stat. § 609.2231, subd. 1. Both parties argue that section 609.2231, subdivision 1, is unambiguous and that its meaning is plain. Yet each advances a different meaning. Struzyk contends that the language of subdivision 1 compels the conclusion that a physical assault is an element of the crime of felony fourth-degree assault of a peace officer (transfer of bodily fluids). Therefore, under Struzyk's theory, the State must prove that a physical assault occurred. The State argues that the intentional transfer of bodily fluids *is* the physical assault.

## A.

Whether the intentional transfer of bodily fluids is *per se* a physical assault under Minn. Stat. § 609.2231, subd. 1, presents a question of statutory interpretation, which we review de novo. *See State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013). The objective of statutory interpretation is to ascertain and effectuate the Legislature's intent. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013) (citing *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 755 (Minn. 2013)). When interpreting a statute, we "give words and phrases their plain and ordinary meaning." *Hayes*, 826 N.W.2d at 803–04 (quoting *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010) (citing Minn. Stat. § 645.08 (2012))). "If the Legislature's intent is clear from the statute's plain and unambiguous language, then we interpret the statute according to its plain meaning without resorting to the canons of statutory construction." *Rick*, 835 N.W.2d at 482. But

when a statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous and we may consider the canons of statutory construction to ascertain its meaning. *Hayes*, 826 N.W.2d at 804; *see also Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870–71 (Minn. 2006).

Minnesota Statutes § 609.2231 (2014) pertains to assaults committed against specific categories of individuals, primarily those engaged in public safety, such as peace officers and correction officers. *See* Minn. Stat. § 609.2231, subds. 1–11. Each subdivision defines the crime of fourth-degree assault of a different class of victims. Subdivision 1 applies exclusively to peace officers, stating as follows:

> *Whoever physically assaults* a peace officer licensed under section 626.845, subdivision 1, when that officer is effecting a lawful arrest or executing any other duty imposed by law is guilty of a gross misdemeanor and may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both. *If the assault* inflicts demonstrable bodily harm or *the person* intentionally throws or otherwise transfers bodily fluids or feces at or onto *the officer, the person* is guilty of a felony and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $6,000, or both.

Minn. Stat. § 609.2231, subd. 1 (emphasis added).

When considering the plain meaning of section 609.2231, subdivision 1, we first must determine whether the phrase located in the second sentence—"or the person intentionally throws or otherwise transfers bodily fluids or feces at or onto the officer"—defines an independent felony offense or whether it defines an aggravated form of the gross-misdemeanor physical assault referenced in the first sentence. Struzyk argues that the phrase in the second sentence provides two alternative means by which a defendant's gross-misdemeanor physical assault in the first sentence may be enhanced to a felony:

8

(1) if the physical assault inflicts demonstrable bodily harm or (2) if the person who physically assaults the officer intentionally throws or otherwise transfers bodily fluids or feces at or onto the officer. Although the parties agree that the first clause of the second sentence acts as a sentencing enhancement to the physical assault referenced in the first sentence, they disagree about whether the second clause of the second sentence serves the same function.

1.

We initially consider the phrase "physically assaults" in the first sentence of section 609.2231, subdivision 1. The phrase is not defined in the statute, nor is it used in any other subdivision of the criminal code. Both parties and the district court consider the phrase "physically assaults" in the first sentence of section 609.2231, subdivision 1, to be synonymous with the definition of fifth-degree assault-harm in Minn. Stat. § 609.224, subd. 1 (2014), and thus focus their arguments on an act that "attempts to inflict bodily harm" or "intentionally inflicts . . . bodily harm." *See id.* The definition of "bodily harm" is "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7 (2014). Because the focus of the parties' argument is on the phrase "physically assaults" as it relates to the infliction of bodily harm, we need not consider whether the phrase "physically assaults" has a broader meaning.[2]

---

[2] The parties have not asked us to, nor do we decide, whether the Legislature intended the phrase "physically assaults" to refer only to assault-harm, or whether the phrase encompasses the conduct of assault-fear. *See State v. Fleck*, 810 N.W.2d 303, 308

(Footnote continued on next page.)

2.

Having considered the term "physically assaults" for the purpose of this appeal, we next consider whether the plain text of subdivision 1 compels the conclusion that both clauses of the second sentence act as sentencing enhancements to the gross-misdemeanor physical assault referenced in the first sentence. Multiple textual indicators provide evidence supporting the conclusion that the entire second sentence modifies the first sentence and does not operate independently.

First, the Legislature's use of the definite article "the" four times in the second sentence indicates that both clauses relate back to the first sentence. It is textually significant that the Legislature used "the," rather than "an," for example. "The" is a limitation word that refers to a specific object. *State v. Hohenwald*, 815 N.W.2d 823, 830 (Minn. 2012) (citing *Clark v. Ritchie*, 787 N.W.2d 142, 149 (Minn. 2010)); *see also The American Heritage Dictionary of the English Language* 1803 (5th ed. 2011) (stating that "the" is "[u]sed before singular or plural nouns and noun phrases that denote particular, specified persons or things"). Therefore, "the assault" in the first clause of the second sentence must refer to the phrase "physically assaults" described in the first sentence. Similarly, "the person," which is used twice, can be understood only as describing the

(Footnote continued from previous page.)

(Minn. 2012) (describing the distinction between assault-harm and assault-fear). A person commits the offense of assault-fear through "an act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10(1) (2014). A person commits the offense of assault-harm through (1) the "attempt to inflict bodily harm upon another," or (2) "the intentional infliction of . . . bodily harm upon another." *Id.*, subd. 10(2) (2014).

10

person referred to in the first sentence—e.g., "[w]hoever physically assaults a peace officer." Likewise, "the officer" is a direct reference to the officer described in the first sentence as "effecting a lawful arrest" or performing some other official duty. Any other interpretation renders these three phrases meaningless. If the second sentence were not tethered to the first, the terms "the assault," "the person," and "the officer" would perform no function in the statute, which violates the canon against surplusage. *See Baker v. Ploetz*, 616 N.W.2d 263, 269 (Minn. 2000) ("A statute should be interpreted, whenever possible, to give effect to all of its provisions, and 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.' ") (quoting *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999)). Proof of the physical assault described in the first sentence is essential to provide meaning to *both* clauses of the second sentence.[3]

Using the conjunctive "if" to begin the second sentence supplies additional evidence that the second sentence is linked to the first. *The American Heritage Dictionary* defines "if" as meaning "[i]n the event that" or "[g]ranting that." *The American Heritage Dictionary*, at 874. The presence of "if" links the second sentence to the first—when either of two conditions about the misdemeanor assault described in the first sentence occurs, the crime is elevated to a felony. The phrase "if the assault" clearly refers to the "physically assaults" crime described in the first sentence. Thus, when a

---

[3] In relevant part, the second sentence of subdivision 1 states: "*If the assault inflicts demonstrable bodily harm* or *the person intentionally throws or otherwise transfers bodily fluids or feces at or onto the officer*, the person is guilty of a felony." Minn. Stat. § 609.2231, subd. 1 (emphasis added).

11

defendant physically assaults a police officer in the line of duty, and that assault results in demonstrable bodily harm or an intentional transfer of bodily fluids, that assault is a felony.

Lastly, the use of "or" to separate the two clauses—"demonstrable bodily harm *or* intentional[] transfer[ of] bodily fluids"—indicates that the two clauses in the second sentence both must be read as modifying the first sentence. (Emphasis added.) We have "long held that in the absence of some ambiguity surrounding the [L]egislature's use of the word 'or,' we will read it in the disjunctive and require that only one of the possible factual situations be present in order for the statute to be satisfied." *State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000); *see also Aberle v. Faribault Fire Dept. Relief Ass'n*, 230 Minn. 353, 360, 41 N.W.2d 813, 817 (1950) ("The word 'or' is a disjunctive and ordinarily refers to different things as alternatives."). Because the term "or" is used, the second sentence necessarily provides two alternative means by which a misdemeanor physical assault on a peace officer is enhanced to a felony assault. The first is when "the assault" inflicts demonstrable bodily harm. The second is when "the person" who "physically assaults a peace officer" intentionally transfers bodily fluids or feces at or onto "the officer." If the Legislature had intended the two clauses of the second sentence to operate as independent clauses that are unconnected to the first sentence, the drafters would have split the clauses into two sentences or placed a comma or semicolon before

the word "or."[4]  *See* Minn. Stat. § 645.08(1) (2014) (stating that "words and phrases are construed according to rules of grammar").

When applying the rules of grammar, *see id.*, it is evident that the two sentences of subdivision 1 cannot be read as separate and distinct from one another. Both types of felony assaults on a peace officer described in the second sentence are predicated on the occurrence of the gross-misdemeanor crime of "physically assaulting" a peace officer in the first sentence. When the gross-misdemeanor physical assault results in demonstrable bodily harm or there is an intentional transfer of bodily fluids at or onto the officer, the physical assault is elevated to a felony.

3.

Viewing Minn. Stat. § 609.2231 as a whole reinforces our conclusion that, according to the plain and unambiguous language of the statute, both types of felony assault on a peace officer described in the second sentence are predicated on the occurrence of the gross-misdemeanor crime of "physically assaulting" a peace officer in the first sentence. We read and construe a statute as a whole and interpret each section in light of the surrounding sections to avoid conflicting interpretations. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000); *see also Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 73–74, 93 N.W.2d 690, 698 (1958). The construction of the other subdivisions of section 609.2231 makes clear that a "physical assault" elsewhere in

---

[4]  For instance, the Legislature could have written: If an assault inflicts demonstrable bodily harm, it is a felony. If an individual intentionally throws or otherwise transfers bodily fluids or feces at or onto the officer, it is a felony.

the section is not a required element for the felony of intentionally throwing or transferring bodily fluid. For example, subdivision 3 applies to correctional employees, prosecuting attorneys, judges, and probation officers; and subdivision 3a applies to secure treatment facility personnel. The language in both subdivisions is functionally identical to each other:

> Whoever commits either of the following acts against an employee . . . while the person is engaged in the performance of a duty imposed by law, policy, or rule is guilty of a felony and may be sentenced to imprisonment for not more than two years or to payment of a fine of not more than $4,000, or both:
>     (1) assaults the person and inflicts demonstrable bodily harm; or
>     (2) intentionally throws or otherwise transfers bodily fluids or feces at or onto the person.

Minn. Stat. § 609.2231, subd. 3.

For these public servants, a physical assault is not required to enjoy the protection of this statute. It is a felony to intentionally throw bodily fluids at these public officials or to transfer bodily fluids onto them. Moreover, peace officers are not the only category of public servants treated differently within the various subdivisions of section 609.2231. It is neither a felony nor a gross misdemeanor to transfer bodily fluids at or onto other first responders, namely, firefighters and emergency medical personnel. *See id.*, subd. 2. Thus, both the text and structure of the other subdivisions in section 609.2231 demonstrate that the Legislature can, if it so chooses, construct a statute that includes the intentional throwing or transferring of bodily fluids as a stand-alone crime—without linking the conduct to a physical assault. But the Legislature neither drafted subdivision

14

1 in a parallel manner nor included peace officers among the public officials protected in section 609.2231, subdivisions 3 and 3a.[5]

When considered in conjunction with the section as a whole, the plain language of subdivision 1 makes clear that the second sentence does not define new felony offenses, but rather provides two conditions on which the underlying offense of physical assault is elevated.

### B.

Having determined that the conduct of intentionally throwing or otherwise transferring bodily fluids or feces at or onto a peace officer enhances a gross-misdemeanor "physical assault" into a felony, we next consider whether that conduct is *per se* a physical assault. The State argues that, as a matter of law, the transfer of bodily fluids is a per se physical assault under subdivision 1. We disagree. Because the transfer

---

[5] The State urges us to conclude that its plain-meaning interpretation of section 609.2231 is in accord with the intent of the Legislature to increase protection for peace officers from infectious diseases and progressively increase the severity of punishment for assaults against peace officers. While the State's analysis of the broad legislative policy that underpins Minn. Stat. § 609.2231 may be sound, we "cannot rewrite a statute under the guise of statutory interpretation." *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 438 (Minn. 2009) (citing *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 119 (Minn. 2001) (stating that the court may not add words to a statute)). After interpreting the words and phrases in section 609.2231, subdivision 1, according to their plain and ordinary meanings, and in accord with the structure of the rest of section 609.2231, we conclude that subdivision 1 is not ambiguous. In the absence of ambiguity, "we do not resort to legislative history to interpret a statute." *Laase*, 776 N.W.2d at 435 n.2; *see also Auto Owners Ins. Co. v. Perry*, 749 N.W.2d 324, 328 (Minn. 2008). We will not re-write an unambiguous statute to conform to what may be the Legislature's intent. *See, e.g.*, *Frederick Farms, Inc. v. Cty. of Olmstead*, 801 N.W.2d 167, 172 (Minn. 2011) (stating that this court cannot "add words to a statute 'that are purposely omitted or inadvertently overlooked' by the Legislature" (quoting *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010))).

of bodily fluids described above enhances a gross-misdemeanor physical assault into a felony, a physical assault must be an element of felony fourth-degree assault of a peace officer (transfer of bodily fluids).

It is axiomatic that it is the State's burden to prove every element of the charged offense. *See State v. Auchampach*, 540 N.W.2d 808, 816 (Minn. 1995) ("Due process requires that the state prove beyond a reasonable doubt the existence of every element of the crime charged."). Therefore, to obtain a conviction for felony fourth-degree assault of a peace officer (transfer of bodily fluids), the State must prove a "physical assault." While we conclude that Minn. Stat. § 609.2231, subd. 1, requires proof of a physical assault, the statute does not require two different assaults.[6] The intentional act of throwing or transferring of bodily fluids can constitute a felony fourth-degree assault (transfer of bodily fluids) if the State proves that the act satisfies the elements of a physical assault. That the transfer of bodily fluids *can* be a physical assault does not relieve the State of its burden to prove that the conduct *is* a physical assault. Consequently, proof of an intentional act of throwing or transferring bodily fluid at or onto an officer, without proof of a physical assault, does not satisfy the elements of felony fourth-degree assault of a peace officer (transfer of bodily fluids).

---

[6]    The court of appeals rejected this argument in *Kelley*, 734 N.W.2d at 695 ("[I]f the assault results in demonstrable bodily harm or if the assault is in the form of an intentional throwing or otherwise transferring of bodily fluids or feces at or onto an officer, then the assault is a felony.").

C.

The State argues in the alternative that "intentionally throwing or transferring bodily fluids or feces at or onto a peace officer is a criminal assault" because bodily fluids and feces may carry and transmit a variety of diseases that can cause bodily harm as defined in Minn. Stat. § 609.02, subd. 7. We are not persuaded.[7] A mere *potential* to cause bodily harm through the transfer of bodily fluids or feces does not satisfy the legal standard for bodily harm. While the threshold for what constitutes bodily harm under section 609.02, subdivision 7, is minimal, our legal standard nonetheless requires proof of pain or discomfort. *See State v. Mattson*, 376 N.W.2d 413, 414–15 (Minn. 1985) (finding sufficient evidence of bodily harm under Minn. Stat. § 609.02, subd. 7, based on a bruise); *State v. Johnson*, 277 Minn. 230, 237, 152 N.W.2d 768, 773 (1967) (concluding that there was sufficient evidence to constitute "bodily harm" under Minn. Stat. § 609.02, subd. 7, when the victim experienced pain from being struck).

In short, for the crime of felony fourth-degree assault of a peace officer (transfer of bodily fluids), the State must prove that there was a physical assault. Therefore, without more, the intentional act of throwing bodily fluids at or transferring those fluids onto the officer is insufficient to prove that a physical assault occurred.

---

[7] The concurrence advances its own interpretation of the statute that it maintains is reasonable. According to the concurrence, each of the two sentences of the statute offers a different way to commit the offense of assault of a peace officer. This means that the act of intentionally throwing or otherwise transferring bodily fluids at or onto an officer in itself is a physical assault because throwing or otherwise transferring bodily fluids requires a physical action. We disagree that this novel interpretation is reasonable. The text of the statute makes plain that the mere act of transferring bodily fluids is not necessarily a physical assault.

17

## III.

Based on our construction of Minn. Stat. § 609.2231, subd. 1, we hold that the district court erred when it failed to include the element of physical assault in its jury instructions on the charge of felony fourth-degree assault of a peace officer (transfer of bodily fluids). "Jury instructions 'must fairly and adequately explain the law' [and] define the crime charged." *Gulbertson v. State*, 843 N.W.2d 240, 247 (Minn. 2014) (quoting *State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012)) (citing *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2011)). A district court's failure to correctly instruct the jury regarding an element of a charged offense requires a new trial, unless it can be established beyond a reasonable doubt that the error did not have a "significant impact" on the verdict. *State v. Koppi*, 798 N.W.2d 358, 364 (Minn. 2001); *see also Neder v. United States*, 527 U.S. 1, 18 (1999) (holding that an instructional error that omits an element of an offense over the objection of a party is a constitutional error that requires reversal, unless the court cannot find beyond a reasonable doubt that the error did not affect the guilty verdict); *accord State v. Watkins*, 840 N.W.2d 21, 27 (Minn. 2013) (applying plain-error review to an unobjected-to jury instruction).

On the record before us, we cannot conclude beyond a reasonable doubt that the district court's erroneous jury instruction—that an intentional act of throwing or transferring bodily fluid at or onto the officer *in itself* is the crime of felony fourth-degree assault of a peace officer (transfer of bodily fluids)—had no significant impact on the guilty verdict. *See Watkins*, 840 N.W.2d at 28; *Koppi*, 798 N.W.2d at 364. The officer testified that he was wearing two shirts and a bullet-proof vest, that the amount of blood

18

was "small," and that the blood did not touch his skin. In light of this testimony, the jury may have concluded that, although Struzyk's act of smearing his blood on the officer was not a physical assault, Struzyk was guilty of the charged offense based on the erroneous instruction. Such a conclusion omits the element of physical assault from the crime of felony fourth-degree assault of a peace officer. In sum, we cannot conclude beyond a reasonable doubt that the erroneous jury instruction did not have a significant impact on the verdict. The erroneous instruction permitted the jury to find that the act of intentionally smearing blood was sufficient to find Struzyk guilty, without also determining that this act satisfied the element of physical assault. *See State v. Mahkuk*, 736 N.W.2d 675, 683 (Minn. 2007).

When a jury instruction given over a party's objection is determined on appeal to be a prejudicial error, we reverse and remand for a new trial. *Koppi*, 798 N.W.2d 358, 364; *State v. Valtierra*, 718 N.W.2d 425, 433 (Minn. 2006). Struzyk argues, however, that the double jeopardy clauses of both the United States Constitution and the Minnesota Constitution bar a retrial on count one (felony fourth-degree assault) because the jury acquitted him on count two (gross misdemeanor fourth-degree assault). *See* U.S. Const. amend. V; Minn. Const. art. I, § 7.

The Double Jeopardy Clause protects a criminal defendant not only from multiple punishments, but also from multiple prosecutions. *See State v. Chavarria-Cruz*, 839 N.W.2d 515, 520, 525 (Minn. 2013) (stating that the Double Jeopardy Clause protects against "a second prosecution of the same offense after an acquittal" (quoting *State v. Leroy*, 604 N.W.2d 75, 77 (Minn. 1999))). When the offense with which a defendant is

19

charged in the second action is identical to the offense of the first action, the constitutional protection against double jeopardy is implicated. *See State v. Thompson*, 241 Minn. 59, 62 N.W.2d 512 (1954). Offenses are identical when they are the same in both law and fact. *Id.* at 62, 62 N.W.2d at 516.

Here, the pertinent offenses are not identical in fact. At trial, the State's theory of the case was that Struzyk's alleged conduct toward the officer prior to being tased—swearing at the officer and advancing at him with clenched fists—constituted the gross-misdemeanor physical assault alleged in count two. After Struzyk was tased, the conduct of intentionally smearing his blood on the officer's uniform constituted the felony assault alleged in count one. Based on this theory, the State's closing argument urged the jury to find that Struzyk committed the gross-misdemeanor assault when he "positioned himself with his chin down, his fists clenched at the sides of his body in what [the officer] called a fighting stance." The jury acquitted Struzyk of this "pre-Taser" conduct and the Double Jeopardy Clause plainly prohibits a new trial on Struzyk's pre-Taser conduct. The Double Jeopardy Clause, however, does not prohibit a new trial for Struzyk's post-Taser conduct.[8]

---

[8]     Struzyk argues that the jury's acquittal on the lesser-included charge of gross-misdemeanor fourth-degree assault alleged in count two precludes retrial of the greater offense of felony fourth-degree assault alleged in count one. Struzyk's argument would have merit if counts one and two were based on the same underlying conduct. However, the pre-Taser conduct underlying the acquitted offense was separate and distinct from the post-Taser conduct underlying his felony fourth-degree-assault conviction.

20

In sum, the State still may attempt to prove that Struzyk committed all of the elements of fourth-degree felony assault of a police officer when he smeared blood on the officer's uniform.

Reversed and remanded.

CONCURRENCE

STRAS, Justice (concurring).

This case requires us to determine the elements of the felony offense of fourth-degree assault of a police officer, Minn. Stat. § 609.2231, subd. 1 (2014). Specifically, we must decide whether, to commit felony fourth-degree assault, a person must *both* "physically assault[]" an officer and "intentionally throw[] or otherwise transfer[] bodily fluids or feces at or onto" the officer. *Id.* On that question, I agree with the court that the district court erred when it failed to instruct the jury that it had to find that Struzyk both physically assaulted Deputy Sheriff Kadlec and intentionally threw or otherwise transferred bodily fluids onto him. I write separately, however, because I disagree with the court's conclusion that the statute, as drafted, is unambiguous.

I.

To protect peace officers acting within the lawful performance of their duties, the Legislature enacted Minn. Stat. § 609.2231, subd. 1, which recognizes the offense of fourth-degree assault against peace officers. The statute provides that

> [w]hoever physically assaults a peace officer licensed under section 626.845, subdivision 1, when that officer is effecting a lawful arrest or executing any other duty imposed by law is guilty of a gross misdemeanor and may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both. If the assault inflicts demonstrable bodily harm or the person intentionally throws or otherwise transfers bodily fluids or feces at or onto the officer, the person is guilty of a felony and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $6,000, or both.

Minn. Stat. § 609.2231, subd. 1.

C-1

The first sentence of the statute creates a condition, otherwise referred to as an attendant circumstance, for the offense: it applies only when the officer is performing a lawful arrest or executing a duty imposed by law. It also identifies the act required to commit the misdemeanor version of the offense: a physical assault. The second sentence creates a felony version of fourth-degree assault of a peace officer that is limited to a particular act—"intentionally throw[ing] or otherwise transfer[ring] bodily fluids or feces at or onto the officer"—or the accomplishment of a specific result—"inflict[ing] demonstrable bodily harm" on the officer.

## A.

The issue presented in this case is the degree of independence between the first and second sentences of the statute. As Struzyk's petition for review put it, is the single act of transferring bodily fluids onto an officer sufficient, standing alone, to constitute a fourth-degree felony assault, or must the "transfer be accompanied by a physical assault?"

One reasonable interpretation of the statute, which is a variation on the State's argument, is that the two sentences of the statute provide separate ways to commit the offense of assault of a peace officer, with the alternate elements listed in the second sentence creating a more serious, felony version of the offense. This interpretation, which I refer to as the per-se assault interpretation, reflects a legislative judgment that the act of intentionally throwing or otherwise transferring bodily fluids at or onto an officer is itself a physical assault. Implicit is the idea that the transfer of bodily fluids necessarily constitutes a physical assault because the adverb "physically," used in the first sentence,

refs to that which is "[o]f or relating to the body" or is "[i]nvolving or characterized by vigorous or forceful bodily activity: physical aggression." *The American Heritage Dictionary of the English Language* 1331 (5th ed. 2011). Throwing or otherwise transferring bodily fluids requires physical action, usually aggressive physical action that is intended to cause fear or harm, so it would be redundant to prove both a physical assault and a transfer of bodily fluids. *See* Minn. Stat. § 609.02, subd. 10 (2014) (defining assault).

The other reasonable interpretation of the statute, advanced by Struzyk, is that the first sentence defines the offense of fourth-degree assault on a police officer, and that the second sentence, with its additional elements, sets forth an aggravated form of the same offense. Struzyk's interpretation, which treats the second sentence as a sentence enhancement, would require the State to prove both a physical assault and the intentional transfer of bodily fluids to convict a person of felony fourth-degree assault of a peace officer. Under this interpretation, the physical assault and the transfer of bodily fluids can be two separate acts, but can also occur simultaneously if, for example, the act of throwing or transferring bodily fluids also constitutes a physical assault. Struzyk's interpretation therefore treats the two sentences as additive rather than separate.

B.

Because the statute has two reasonable interpretations, it is ambiguous. When a statute is ambiguous, we may consider the canons of statutory construction to ascertain its meaning. *See State v. Nelson*, 842 N.W.2d 433, 443 (Minn. 2014). Here, although both interpretations are reasonable, the better of the two is the sentence-enhancement

interpretation: the State must prove *both* a physical assault *and* an intentional transfer of bodily fluids or feces onto an officer to convict a person of felony fourth-degree assault.

As Struzyk notes, there are textual clues that the two sentences of the statute are additive, not separate. First, the antecedent for "the assault" referenced in the second sentence is the physical assault described in the first sentence. As we have held, the "definite article 'the' is a word of limitation that indicates a reference to a specific object." *State v. Hohenwald*, 815 N.W.2d 823, 830 (Minn. 2012). Rather than referring to an unspecified assault, the second sentence refers to a specific object—here, the assault from the first sentence.

Second, "the person" from the second sentence can only be the "whoever" from the first sentence, because the only other person specified—the peace officer—cannot assault himself. Indeed, the statute itself, when referring to the "peace officer," consistently uses the word "officer" to distinguish between the person committing the offense and the officer, who is the victim of the offense. Thus, "the person" referred to in the second sentence is the person who "physically assaults" the peace officer.

Third, the second sentence begins with the word "if," meaning "provided," which, read in context, provides a connection between the first and second sentences of the statute. *See, e.g.*, *Bagnall v. Bagnall*, 225 S.W.2d 401, 402 (Tex. 1949) ("The use of [the] word [if] in itself implies a condition; it means 'provided,' or 'in case that.' "); *see also American Heritage Dictionary*, 874 (stating that "if" means "[in] the event that" or "[o]n the condition that"). The use of the word "if" conditions the classification of the crime and the penalty on satisfaction of one of the two requirements—an intentional

transfer of bodily fluids or demonstrable bodily harm—listed at the beginning of the second sentence. *See The Chicago Manual of Style* 5.201 (16th ed. 2010) (describing the use of "if" as a subordinating conjunction that states a condition or an assumption). But it also serves another purpose: by having the word "if" precede "the assault"—which, as stated above, is a reference to the assault defined in the first sentence—the second sentence links itself to the first.

Fourth, the assumption underlying the per-se assault interpretation is flawed. It simply is not true that the intentional act of throwing or transferring bodily fluids at or onto an officer, by itself, is *necessarily* a physical assault. It is easy to envision a situation in which a person could intentionally transfer bodily fluids onto a peace officer without either intending that the officer fear immediate bodily harm or death (assault-fear) or intending to inflict bodily harm on the officer (assault-harm).[1] *See generally State v. Fleck*, 810 N.W.2d 303, 309 (Minn. 2012) (defining assault-fear and assault-harm). This could happen, for example, if a bloody victim reaches out to an officer for assistance. Because the victim has neither committed assault-harm nor assault-fear

---

[1]    The statute does not define the phrase "physically assaults," and no other assault statute uses this phrase. The parties and the district court assumed that it refers only to "assault-harm," which requires proof that the defendant inflicted, or attempted to inflict, bodily harm on the officer. *See* Minn. Stat. § 609.02, subd. 10(2) (defining assault-harm). Their assumption was mistaken. By adding the adverb "physically" to the word "assaults," the statute indicates that the act underlying the assault must be physical in nature; it does not mean that only an assault-harm will suffice. Assault-fear can, and often does, involve a physical act, which if intended to create fear in an officer, is sufficient to constitute a "physical assault." However, in those instances in which assault-fear includes only verbal threats against an officer, a person cannot be convicted of a violation of Minn. Stat. § 609.2231, subd. 1, because there has been no physical assault of an officer.

against the officer, even though he or she has intentionally transferred blood onto the officer, the lack of a physical assault should prevent the State from later prosecuting the victim for felony assault of a peace officer.

Accordingly, to convict a person of gross-misdemeanor assault of a peace officer, the State must prove that the person: (1) physically assaulted a peace officer, and that (2) the officer was conducting a lawful arrest or executing another duty imposed by law. Minn. Stat. § 609.2231, subd. 1. To convict a person of the felony version of the offense, the State must prove that a person: (1) completed each of the elements of gross-misdemeanor assault of a peace officer; and (2) either inflicted demonstrable bodily harm on the officer or intentionally threw or otherwise transferred bodily fluids or feces at or onto the officer.

## II.

For the foregoing reasons, I would reverse the decision of the court of appeals and remand for a new trial on the charge of fourth-degree assault of a peace officer.[2]

---

[2] I agree with the court that retrying Struzyk on the felony charge would not create a double-jeopardy problem because the charge of gross-misdemeanor, fourth-degree assault of which Struzyk was acquitted involved different underlying facts. Moreover, even if both charges involved identical facts, there still would be no double-jeopardy violation because, under my interpretation of the phrase "physically assaults," the district court's instructions on the gross-misdemeanor charge, which included only an assault-harm theory, erroneously omitted the assault-fear theory, the addition of which would allow the felony charge to involve a different element on remand. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) (stating that if one crime requires proof of an additional fact that another crime does not, then the offenses are not the same for double-jeopardy purposes). The jury has never considered whether Struzyk physically assaulted Deputy Kadlec based on an assault-fear theory.

Of course, the fact that the district court gave an incorrect instruction on the physical-assault element has no bearing on Struzyk's acquittal of the gross-misdemeanor charge. *See State v. Sahr*, 812 N.W.2d 83, 92 (Minn. 2012) (stating that double-jeopardy principles preclude review of an erroneous legal ruling after an acquittal). Instead, it just means that the State would not violate Struzyk's double-jeopardy rights if it were to retry him on the felony charge, one of the two offenses of which the jury found him guilty after the trial.